IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KATINA A. LEWIS, Individually and as Personal Representative of the Estates of Randall K. Bowman and Jacqueline A. Bowman (deceased) and JENNIFER BOWMAN, | ) ) ) ) ) | CIVIL ACTION FILE NO.: 1:10-CV-1228-WSD |
|     Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| NEW PRIME INC. d/b/a PRIME INC. and MOHAMADOU BESSIROU SIDDO HASSAN, | ) ) ) ) | |
|     Defendants. | ) ) | |

**PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF
DEFENDANTS' PURPORTED EXPERT DONALD ROBERTS PURSUANT
TO THE FEDERAL RULES OF EVIDENCE RULE 702 AND LOCAL
RULE 26.2(C)**

COME NOW, the above-referenced Plaintiffs and file this, their Motion to

Exclude the Testimony of Defendants' Purported Expert Donald Roberts pursuant

to the Federal Rules of Evidence (hereinafter "FRE") 702 and Local Rule 26.2(c)

of the Northern District of Georgia, and show this Court as follows:

1.

On or around May 18, 2010, Plaintiffs filed a complaint in Fulton County asserting claims arising from a motor vehicle wreck between Plaintiffs' vehicle and the Defendants' tractor trailer on August 4th, 2009. Defendants removed the case to this Court, where it has remained.

2.

Plaintiffs contend that Defendant operated his tractor trailer well under the posted minimum speed limit of forty (40) mph when Plaintiffs' van came upon it traveling at or near the speed limit. Due to the large speed differential, Plaintiffs were unable to avoid striking the rear of Defendants' vehicle.

3.

During the course of discovery, Defendants identified accident reconstructionist Donald Roberts as a testifying expert. Roberts has opined that the Defendants' tractor-trailer was driving at approximately 55 mph. when the Plaintiffs' vehicle struck the rear of the trailer as opposed to plaintiffs' contention that the Prime tractor-trailer was traveling at approximately 20 mph.

4.

Donald Roberts' purported *expert* conclusions are based on numerous assumptions that are not supported by the evidence and not allowed under FRE 702 and *Daubert*. Roberts attempts to circumvent the requirements of *Daubert* by

establishing three separate and distinct methodologies that he performed to arrive at his opinions. Dep. Donald Roberts 173:1-5 March 21, 2012 (Relevant portions attached hereto as "**Exhibit A**"). Even a cursory review of these "methodologies," reveals that the entirety of Roberts' testimony is inadmissible.

5.

According to Roberts' first methodology, he determined that the Defendants' tractor-trailer was going between forty-four (44) and sixty-one (61) mph. *Id.* at 173: 20-25. Roberts simply calculated the distance from the point of impact to the final point of rest and backtracked his calculations to come to an estimated speed of the tractor- trailer when the impact occurred. Roberts made three critical assumptions in this methodology and the evidence in this case not only fails to support these assumptions, but directly contradicts these assumptions.

6.

Roberts freely admits that his calculations would be wrong if he incorporated the testimony of his own clients related to when they actually applied the brakes after the collision. *Id.* at 178: 2-11; 186:2-10. Thus, by Roberts own testimony, his methodology is flawed and his opinions derived therefrom should be excluded.

7.

Roberts' second methodology is completely based upon his review of what he admits is incomplete data from the Bowman vehicle event data recorder (EDR or black box).

8.

Roberts takes this incomplete data from the EDR and attempts to determine the change in velocity of the van to determine the speed that the truck was travelling at the time of impact. The problem is that this particular EDR only measures 100 milliseconds and the collision in this case took close to 200 milliseconds. Therefore, the EDR or black box could not record all of the data.

9.

Here, Roberts admits that this particular wreck occurred between 100 and 200 milliseconds and that the EDR did not capture all of the delta V. *Id.* at 204:20-25; 205:1-4. In fact, Roberts admits that the 18.39 mph EDR measurement is inaccurate. *Id.* at 213:3-12. Although for this methodology, he estimates the speed based upon the EDR that stopped recording at 100 milliseconds, he admits that he cannot predict the delta V (or slope) at 110 milliseconds, 120 milliseconds, or 150 milliseconds. *Id.* at 212:12-21. Thus making his opinions pure speculation because Roberts used an unknown and untested methodology to extrapolate what he believes the black box would have recorded if it had  recorded a complete cycle

(which it did not), despite him admitting he cannot make this prediction.  The data was unreliable and Roberts second methodology is equally unreliable and should not be allowed.

9.

The third methodology Roberts employed has no scientific value and is not helpful to the jury.  Roberts simply took the distance that the Defendants' tractor trailer travelled and divided it by the length of the trip to determine an average speed.  It is impossible to determine the speed of a vehicle at a particular time by taking an average of speeds over a longer period of time and any testimony by Roberts based in whole, or in part, on this calculation should be excluded.

10.

Plaintiffs contend that each of these methodologies is fatally flawed and does not meet the criteria under F.R.E. 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) and this court should exclude his testimony.

DATED, this 12th day of June, 2013.

Respectfully submitted,

s/ Mark D. Link
_____
MARK D. LINK

GA. BAR NO. 453153
FLA. BAR NO. 0917760
Attorney for Plaintiff

Link & Smith, P.C.
2142 Vista Dale Court
Tucker, GA 30084
Telephone: (404) 315-8840
Facsimile: (770) 414-8098
E-Mail: link@linksmithpc.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Local Rule 7.1(D) of the Northern District of Georgia that this pleading has been prepared in compliance with Local Rule 5.1(C).

Respectfully submitted,

s/ Mark D. Link

_____
MARK D. LINK
GA. BAR NO. 453153
FLA. BAR NO. 0917760
Attorney for Plaintiff

Link & Smith, P.C.
2142 Vista Dale Court
Tucker, GA 30084
Telephone: (404) 315-8840
Facsimile: (770) 414-8098
E-Mail: link@linksmithpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 12th, 2013, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record and via Regular U.S. Mail with sufficient postage affixed:

>Mr. Richard Foster
>HICKS CASEY & FOSTER
>136 North Fairground Street
>Suite 100
>Marietta, Georgia 30060

Respectfully submitted,

s/ Mark D. Link

_____

MARK D. LINK
GA. BAR NO. 453153
FLA. BAR NO. 0917760
Attorney for Plaintiff

Link & Smith, P.C.
2142 Vista Dale Court
Tucker, GA 30084
Telephone: (404) 315-8840
Facsimile: (770) 414-8098
E-Mail: link@linksmithpc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KATINA A. LEWIS, Individually | ) | |
| and as Personal Representative of the | ) | CIVIL ACTION FILE NO.: |
| Estates of Randall K. Bowman and | ) | 1:10-CV-1228-WSD |
| Jacqueline A. Bowman (deceased) | ) | |
| and JENNIFER BOWMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NEW PRIME INC. d/b/a PRIME INC. and | ) | |
| MOHAMADOU BESSIROU SIDDO | ) | |
| HASSAN, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO
EXCLUDE THE TESTIMONY OF DEFENDANTS' PURPORTED EXPERT
DONALD ROBERTS PURSUANT TO THE FEDERAL RULES OF
EVIDENCE RULE 702 AND LOCAL RULE 26.2(C)**

COME NOW, the above-referenced Plaintiffs and file this Memorandum in

Support of their Motion to Exclude the Testimony of Defendants' Expert pursuant

to the Federal Rules of Evidence (hereinafter "FRE") 702 and Local Rule 26.2(c)

of the Northern District of Georgia, and show this Honorable Court as follows:

I.       <u>INTRODUCTION</u>

Plaintiffs bring this Motion to exclude the Defendants' purported accident reconstructionist Donald Roberts because his methodology does not satisfy the reliability requirements set forth in FRE 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

II.     STATEMENT OF FACTS AND PROCEDURAL POSTURE

This case involves a motor vehicle accident that happened at approximately 1:00 a.m. on August 4, 2009, on Interstate 20 in Greene County, Georgia. Plaintiffs were passengers in a van that collided with the back of the Defendants' tractor trailer.  Plaintiffs contend that the tractor trailer was traveling approximately 20 mph, well below the minimal speed limit.  As a result of the collision, Plaintiff Neumann was killed and Plaintiffs Griffin, Deveroux and Antico were catastrophically injured.

During the course of discovery, Defendants identified Donald Roberts as an expert in the field of accident reconstruction.  This Court's Scheduling Order and Local Rule 26.2(c) require any party objecting to a proposed expert to file a motion to exclude the expert's testimony no later than the date that the proposed pre-trial order is submitted.  As the date the pre-trial order is to be submitted is June 12th, 2013, the Plaintiffs' Motion is timely.  For the reasons set forth herein below, this Court should exclude the testimony of Donald Roberts.

The Defendants have offered the expert testimony of Donald Roberts, who was first contacted by the Defendants in December 2009 (Dep. Roberts 48:1-20). Even assuming, *arguendo,* that Roberts is qualified, his methodology is clearly unreliable and untrustworthy, nor has his opinion been subjected to any method of scientific testing.

III.    ARGUMENT AND CITATION OF AUTHORITY

**A. STANDARD OF REVIEW**

The burden of proof under *Daubert* falls upon the party offering the expert witness. *McClain v. Metabolife Int'l*, 401 F. 3d 1233 (11th Cir. 2005). The proponent of the witness has the burden of demonstrating that each expert is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact. *Id*.

**B. Applicable Legal Principles**

The admissibility of expert testimony is governed by FRE 702, as explained by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).  In *Daubert*, the Supreme Court made it clear, and it is now accepted throughout Federal courts, that a trial court must act as a **gatekeeper** and determine, at the outset, whether the purported expert is qualified to express a

reliable opinion based upon sufficient facts or data and the application of accepted

methodology. *Daubert*, 509 U.S. at 592-593; *see also*, *Kumho Tire Company, Ltd.*

*v. Carmichael*, 526 U.S. 137, 152 (1999). "The Judge's role is to keep unreliable

and irrelevant information from the jury because of its inability to assist in factual

determination, its potential to create confusion, and its lack of probative value."

*Alison v. McGhan Med. Corp*., 184 F.3rd 1300, 1311-12 (11th Cir. 1999). As the

gatekeeper the Court should admit expert testimony only if it is reliable and

relevant. *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005). District courts

are charged with this gatekeeping responsibility to ensure that "speculative,

unreliable expert testimony does not reach the jury "under the guise of reliability

that accompanies the phrase "expert testimony." *Mccorvey v. Baxter Healthcare*

*Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Thus, as the law now stands in well-

developed state and federal courts, in order to fulfill their obligation under

*Daubert*, trial courts must engage in a rigorous inquiry to determine whether "(1)

The expert is qualified to testify competently regarding the matters it intends to

address; (2) The methodology by which the expert reaches his conclusion is

sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*; and

(3) The testimony assists the trier of facts, through the application of scientific,

technical, or specialized expertise, to understand the evidence or to determine a

fact at issue." *City of Tuscaloosa v. Harcros Chems, Inc.*, 158 F. 3rd 548, 562

(11th Cir. 1998).

The reliability or validity component is the most important part of FRE 702.

It is also the basis for the helpfulness requirement that the expert's testimony assist

the trier of fact in determining an issue in the case. What this statute requires is

sometimes presented in a short form version that the expert is "qualified to render

an expert opinion, that the opinion is **reliable**, and that the opinion would assist the

trier of fact in resolving a disputed issue of material fact..." *McDowell v. Brown*,

392 F.3rd 1283, 1298 (11th Cir. 2004) (emphasis added).

Any step in the expert's methodology which renders it unreliable "renders

the expert's testimony inadmissible." *McClain v. Metabolife International Inc.*, 401

F.3rd 1233 (11th Cir. 2005) (quoting *Amorgianos v. AMTRACK*, 303 F.3rd 256,

267 (2002).  The trial court must decide if the expert has followed a reliable

method and properly applied the method to the facts of the case. *Kumho*, 256 U.S.

at 156. In addition, the trial judge has "the task of ensuring that an expert's

testimony both rests on a reliable foundation and is relevant to the task at hand."

*Daubert*, 509 U.S. at 597. "In ascertaining the reliability of a particular scientific

expert opinion, we consider, to the extent possible: (1) whether the expert's theory

can be and has been tested; (2) whether the theory has been subjected to peer

review and publication; (3) the known or potential rate of error of the particular

scientific technique; and (4) whether the technique is generally accepted in the

scientific community." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d

1333, 1341 (11th Cir. 2003). This list of factors set forth by the Supreme Court in

*Daubert*, however, "does not exhaust the universe of considerations that may bear

upon reliability of a given expert opinion, and a federal court should consider any

additional factors that may advance its Rule 702 analysis" *Id*.; *See also*, *Kumho*,

526 U.S. at 150 ("*Daubert* makes clear that the factors it mentions do not

constitute a 'definitive checklist or test'"); *Daubert*, 509 U.S. at 594 (noting that

the *Daubert* inquiry is a "flexible one"). Despite this leeway, the tests that the trial

court uses must focus on scientific validity leading to the relevance and reliability

of the evidence. *Id*.

     *Daubert* makes it clear that the court must investigate the expert's

methodology and not determine admissibility based upon the expert's conclusion.

*Id*. However, as the Supreme Court explained, "conclusions and methodology are

not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136,

146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). Furthermore "Nothing in

either *Daubert*, or the Federal Rules of Evidence requires a District Court to admit

opinion evidence that is connected to existing data only by the *ipse dixit* of the

expert." *Id*. A "trial court must scrutinize not only the principles and methods used by the experts, but also whether those principles and methods had been properly applied to the facts of the case." Federal Rule of Evidence 702 Advisory Committee's Note.

The *Daubert* analysis does not conclude at the reliability determination, rather it continues and the Court must determine whether or not the proffered testimony is relevant, or more specifically, whether the testimony fits and is helpful. The expert's testimony must be sufficiently tied to the facts of the case so that it will aid the jury in resolving a factual dispute. *Daubert*, 509 U.S. at 591.

Finally, it cannot be forgotten "the proponent of the expert testimony carries a substantial burden under Rule 702. The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Cook v. Sheriff of Monroe County, Florida*, 402 F.3d 1092, 1107 (11th Cir. 2005).

## C. APPLICATION OF DAUBERT TO DONALD ROBERTS

This Court should exclude Defendants' purported accident reconstructionist, Donald Roberts, based on the following argument and citation to facts.

> i. *Roberts Testimony is Based on Incorrect Factual Assumptions.*

The Plaintiff's Motion to Exclude the testimony of Roberts should be granted because his testimony does not satisfy the evidentiary standard of FRE 702. **Roberts first opinion** that he offered is that the Defendants tractor trailer was going between 44 and 61 mph. Dep. Roberts 173:20-25. In order to come to this opinion Roberts simply calculated the distance from the point of impact to the final point of rest and back-tracked his calculations to come to an estimated speed of the tractor-trailer. Roberts made three critical assumptions in this methodology and the evidence in this case does not support these assumptions, thus this particular methodology is flawed. Roberts first identified where the impact between the van and the truck occurred and then determined where the vehicles came to final rest. *Id.* at 174:4-16. Next he determined the distance from the point of impact to the final rest position to be 494 feet. *Id.* at 175:2-3. The Plaintiffs do not disagree with this distance calculation; however, Plaintiffs disagree with Roberts' methodology because he applies assumptions to the distances that are not only unsupported by the evidence, but directly contradicted by the evidence. Roberts uses the distance of 494 feet and then assumes that the tractor trailer begins to slow down or decelerate at a rate of .2g's to .3g's per second.[1]  Roberts'

_____

[1]This. 2-.3g's simply is a method by which accident reconstructionists express in g forces how a vehicle is slowing down or accelerating.  You can equate it to a drag racer or a roller coaster, the faster the vehicle accelerates the more g forces are

next step is to *assume* that the tractor-trailer driver reacted to the collision within.75 to 2 seconds. *Id.* at 175:4-21; 177:9-178:6. Roberts then plugged into his calculations the following: 1) 494 feet; 2) deceleration rate of .2-.3 g's; and 3) driver reaction time of .75–2s to determine the speed of the truck at the time of impact. *Id.* However, there is absolutely no evidence for Roberts to base his assumption that the driver reacted and started to brake within 2 seconds of the impact--Roberts simply assumed this for the purposes of his calculations. *Id.* at 178:2-6; 177:9-15. In fact all **the evidence points to the opposite.** Edward Trotter (the co-driver in the tractor-trailer) was looking thru the sleeper berth curtain when the impact occurred. Dep. Edward Trotter 10/13/11 at 40:8-13 (relevant portions attached hereto as "**Exhibit B**.") The collision caused Trotter to fly back, hit his head on the bunk and he wound up under the bunk. *Id.* at 40:18-20. From the time the van struck the tractor-trailer, Trotter went flying back and then got up and into the passenger seat, 7 or 8 seconds had passed AND THEN Trotter told Hassan to brake it down and start moving over. *Id.* at 51:10-14. Finally, at this point Hassan **then hit the hazards and began braking.** *Id. at* 51:10-14.

---

exerted on a vehicle or the person inside the vehicle and this is why the person will feel as though they are being pushed back into the seat. The exact opposite happens upon deceleration.

Roberts candidly admitted that if Hassan did not hit the brakes for 7 to 8 seconds, his calculations would be incorrect:

> Q:     If he didn't begin braking until 7 seconds the entire calculations would be wrong; true?
>
> A.      If he waited -- if -- I mean, if he still got his foot on the gas and everything, sure, it -- it -- the calculation isn't correct.

Dep. Roberts, 186:2-7; *See also* 178:7-11.  Roberts calculation and more important his methodology is wrong since he did not even consider the evidence of what actually occurred  after the collision.  Not only did Trotter testify that it took longer than two seconds for the truck to start braking, the truck driver himself testified that he did not hit his brake within 2 seconds. Dep. Hassan 9/23/2011 at 100:10-24. (Relevant portions attached hereto as "**Exhibit C**").  Clearly, Roberts did not apply the evidence of this case in reaching his conclusions. If he had, he never could have come to the opinion that Hassan began breaking from .75-2 seconds after the impact occurred since all the testimony is contrary.

Here, Roberts made assumptions instead of applying the evidence – evidence that his own clients supported in their testimony.  To arrive at his opinion, he assumes that Hassan began braking within the normal perception reaction time of .75 – 2 seconds. Dep. Roberts 178:2-6.  Roberts ignored his own clients' testimony on the most important issue relevant to his calculations.  Instead

of applying the evidence in the case as required by FRE 702, he made improper assumptions because if he had applied the evidence, his conclusion would have supported the Plaintiffs' case and instead, made assumptions and reached an unfounded and unreliable conclusion. The true length of time that it took for the driver to start braking is completely different than what Roberts assumed to arrive at his opinions and this assumption is a significant underpinning to Roberts opinion about the speed. By using an assumption that is not supported by the evidence in this case, it cannot be said that Roberts opinions encompassed in his first methodology are sufficiently reliable to sustain a *Daubert* challenge. As the Court can see Roberts did not apply the evidence in THIS case to his opinion and therefore his speed range of 44-61 mph. should be excluded.

Put simply, there is simply no reliable methodology that Mr. Roberts can employ to come to the conclusion that the truck driver started braking his tractor trailer within 2 seconds of the impact and his assumptions take an incredible leap of faith and are completely contrary to the evidence. Where there is "simply too great an analytical gap between the data and the opinion proffered," the trial court should exclude the expert's testimony. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). There is simply no evidence or reliable methodology for Roberts to make this wild assumption and his ultimate opinions are not founded within the

guidepost set forth by *Daubert*, instead his opinions are based on speculation and therefore cannot be reliable evidence per *Daubert* and its progeny.  This flawed analysis is even more apparent when you consider that at the speed range of 44-61 mph. that Roberts opined to it would be impossible for the truck to come to a final rest in 494 feet when Hassan starts to brake some seven seconds after impact Roberts Depo at 272-274.  The truck did come to a stop in 494 feet and testimony from two of the Defendants own employees confirms that the truck did not start to brake until seven (7) seconds after impact, the only unknown is the speed of the truck.  Roberts has essentially come up with his conclusion of 44-61 mph. and then plugged into the equation the only variable that he could to make it work (ie, braking within 2 seconds of impact).

Even more concerning is the fact that Roberts has based his opinions on evidence that has since been further explained by Trotter.  The Plaintiffs have filed a separate motion for sanctions against the same Defendants since Trotter has provided more details of the wreck in a Missouri courtroom.  Trotter testified on November 26, 2012 as follows:

COUNSEL:    Mr. Trotter, please tell the jury exactly what happened that night.

TROTTER:    Okay.  We was on I-20 in Georgia, and Hassan was driving at the time, and he woke me up and said that it's

been about 10 hours and he was tired. So I opened up the curtain. And I looked around and I seen that we was on the shoulder of the highway. And I said: Okay, if it's been 10 hours, that's fine. We can trade legally. And I said: But we can't do it here. We have to do it on the next exit or either a truck stop, whatever we come to next. That way we can get our paperwork organized and trade seats. And he said that was fine. I closed the curtain. I grabbed my clothes to get dressed. And about that time that's when the accident happened, right after that. (Exhibit E. Trotter pg. 6, lines 13-25; pg. 7, lines 1-5)

*****

COUNSEL:       But in terms of what you were doing and what you recall, am I hearing you right that when you woke up and came to the curtain, you're stopped on the shoulder of the road?

TROTTER:       Excuse me. Yes.

COUNSEL:       And then you had that discussion, what, just real brief, doesn't take but a few seconds?

TROTTER:       Yes.

COUNSEL:       Went back into the sleeper berth to get dressed?

TROTTER:       Yes.

COUNSEL:       And then were coming forward through the curtains when the impact occurred?

TROTTER:       Yes. I had just pulled up my pants, and I was opening the curtain. That's when—that's all I know. I flew

backwards.  (Exhibit E, pg. 7, lines 17-25; pg. 8, lines 1-6)

                          *****

COUNSEL:       Under the testimony you gave today, you say you woke up; you're on the side of the road.  We've heard that. Then you went back and started getting prepared to take your shift.  Basically put your pants on, put your clothes on, whatever, right?

TROTTER:       Yes.

COUNSEL:       All right, and you spent, what, approximately a minute doing that?

TROTTER:       I figure maybe about 20 or 30 seconds.  (Exhibit E, pg. 33, lines 11-21).

In this case not only did Roberts make erroneous assumptions about how long it took for the tractor-trailer to brake, his entire opinions now rest on a version of the events that is completely inaccurate.  The Plaintiffs have already filed a motion to strike the Defendants Answer based on the new Trotter testimony.  In the event that the Court does not grant the Motion to Strike, an appropriate sanction would be to exclude Roberts erroneous opinions.

           ii.    *Roberts Testimony is Unreliable and Untrustworthy under Daubert's Second Prong.*

In determining reliability under *Daubert's* second prong, the primary focus is on the methodology applied by the expert in arriving at his conclusion. *Daubert*,

                             14

509 U. S. at 590. Factors used in determining reliability, among others, include: (l)

whether the expert's methodology can be tested; (2) whether the technique

employed by the expert has been subjected to peer review and publication; (3) an

assessment of the known or potential error rate; and (4) the general acceptance of

the scientific theory in the relevant scientific community. *Id*. at 593-94; *See also*,

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., Inc.*, 326 F.3d 13 33 , 1347 (11th

Cir. 2003). The factors in *Daubert* are not intended to be a "definitive checklist,"

and should not impinge on the flexible inquiry by the trial court in evaluating the

reliability of expert testimony. *Daubert*, 509 U.S. at 593. Indeed, the advisory

committee notes to FRE 702 explain that the 2000 amendment, while intended as

an endorsement of the *Daubert* conception of the trial judge as a gatekeeper, was

not intended to codify the specific factors mentioned in *Daubert*. *See*, *Rudd v. Gen.

Motors*, 127 F. Supp. 2d 1330 (M.D. Ala. 2001). Courts both before and after

*Daubert* have identified other factors relevant in determining whether expert

testimony is sufficiently reliable to be considered by the trier of fact. These factors

include: (1) whether the expert is proposing to testify about matters growing

naturally out of research he has conducted independent of the litigation, or whether

the opinion was developed solely for the purposes of testifying; (2) whether the

expert has unjustifiably extrapolated from an accepted premise to an unfounded

conclusion, *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997); (3) whether the

expert has adequately accounted for obvious alternative explanations, *Sheehan v.*

*Daily Facing Form* 104 F.3d 940 , 942 (7th Cir. 1997); and (4)whether the expert

"is being as careful as he would in his regular professional work outside his paid

litigation consulting," *Kumho Tire Co. v. Carmichael*, 526 U. S. 137, 151 (1999).

In this particular case Donald Roberts has employed untested methods, methods

that have not been peer reviewed and methods that are only suited for litigation

purposes.

> iii.     *Roberts Admits His Conclusions Regarding the Event*
> *Data Recorder (EDR or black box) are Nothing More*
> *than Speculation as the Principles and Methodologies he*
> *Utilized in Arriving at These Opinions are Untested and*
> *Unreliable.*

An expert may not simply assert an opinion without supporting it with

reliable evidence. *Joiner*, 522 U. S. at 146. The "trial court must scrutinize not only

the principles and methods utilized by the expert, but also whether those principles

and methods have been properly applied to the facts of the case." FRE 702

Advisory Committee Note.  In *Joiner*, the Supreme Court found that the plaintiff's

expert failed to support his conclusions with a valid methodology. *Joiner*, 522 U.S.

at 149. The plaintiff was an electrician who sued General Electric claiming that the

company manufactured transformers and dielectric fluid contaminated with

polychlorinated biphenyls (PCB) and that his exposure to the PCB caused him to develop small cell lung cancer. *Id*. at 139. To prove the plaintiff's case, his experts relied upon studies that proved that when infant mice were exposed to very high doses of PCB injected directly into their stomach, the mice developed cancer. *Id*. at 144. Defendants showed that the plaintiff's exposure to the PCB was far less than the level injected into the mice, the plaintiff had a different form of cancer, and that no other study showed that PCB led to cancer in any other species. *Id*. The plaintiff argued that these animal studies could be used to serve as a basis for supporting the experts' opinions. *Id*. The Supreme Court found that the animal studies were so dissimilar to the plaintiff's claim that the trial court did not abuse its discretion in rejecting the studies as a basis for the plaintiff's expert opinions. *Id*. at 145. The Supreme Court in *Joiner* essentially rejected the plaintiff's extrapolation of data derived from studies in mice to a human subject as there was no logical connection between the two. In the instant case the Defendants have also attempted to extrapolate data from the black box to arrive at a conclusion without offering any logical explanation for this extrapolation of the data.

So how did Roberts extrapolate the data? The first step in the process was to take the known reliable data which was the speed of the van at the time of the impact. Dep. Roberts 152:6-15. The known speed of the Bowman van at the time

of impact was 71 mph. The parties do not contest the accuracy of this 71 mph.

The next step in his flawed methodology was to determine what the black box

recorded as the change in velocity at the time of impact or delta V (the black box

recorded a delta V of 18.39 mph). Roberts then simply subtracted the delta v value

from 71 mph. to determine that the truck had to be travelling 53 mph. (71mph -

18mph). This is the very definition of *ipse dixit* testimony *Kumho Tire* warned of.

Even if the above methodology was scientific, it would still be inaccurate because,

Roberts admits that the delta V of 18.39 mph. that the EDR recorded, was not the

total delta V because this wreck took longer than the 100 milliseconds that the

EDR records. *Id.* at 204:20-25.

If the van hits a brick wall, the EDR's 100 milliseconds is sufficient to

record the entire delta V. *Id.*at 208:12-18. Here, Roberts admits that because the

van hit a moving truck's ICC bar, the crash would have taken longer. *Id.* at 209:15-

21. In fact, Roberts admitted that this particular wreck occurred between 100 and

200 milliseconds and that the EDR did not capture all of the delta V. *Id.* at 204:20-

25. Thus, the delta V as recorded by the EDR is inaccurate.

Roberts acknowledges the inaccuracy and then backtracks, claiming that the

actual delta V is "probably in the 20s, despite the EDR recording of 18.39. *Id.* at

213:3-11. When asked how he arrived at this opinion, Roberts admits he cannot

extrapolate these numbers (or curve on the graph) past 100 milliseconds as it is not a straight line analysis. *Id.*at 211:22-212:11. When he was specifically asked what the graph would show at 110 milliseconds, 120 or 150ms. he couldn't. *Id.* at 212:12-21. There is no science behind what he was doing and he cannot offer any plausible explanation as to how this is reliable.[2] Simply put, Roberts is trying to extrapolate a graph after admitting the graph is incomplete and admitting that it is impossible to extrapolate the graph. He uses the 18.39 mph. delta V, yet admits that this number is inaccurate and the actual delta V is "probably in the 20s." *Id.* at 213:3-11. It is important to note, he claims the actual Delta V is in the 20s, but admits this is pure speculation as he cannot extrapolate this from the incomplete EDR data.

His methodology is dubious at best and is based on speculation, not science. His opinions in this regard have not been peer reviewed, they have not been tested, nor have they ever been presented in a non-litigation setting.

---

[2] Imagine that you have a video of a van colliding into the back of a tractor-trailer but at the exact moment the two vehicles make contact the camera loses power and you are left only with the image of the two bumpers touching. Without knowing the speed of the impact and only looking at the contact of the two bumpers, it is impossible to say what type of damage the van would sustain. . That is essentially what happened in this case, the black box recorder stopped recording before the collision ended and therefore, only recorded some of the Delta V-yet Roberts relies on this data.

"Subjective speculation that masquerades as scientific knowledge" does not provide "good grounds" for the admissibility of expert opinions. *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001). The expert must offer testimony based on scientific knowledge, not his personal opinion. As the methods Roberts employed in arriving at his conclusions in this case are fundamentally flawed, Roberts's testimony should be excluded. *Daubert*, 509 U.S. a t 590.

A key issue in determining whether an expert's offered opinion and conclusions are reliable is determining whether his theory can (and has been) tested " *Daubert*, 509 U S. at 593; *McGee v. Evenflo Co., Inc.,* 2003 WL 23350439 (M.D.Ga. Dec 11, 2003). This is because courts have recognized the importance that actual testing serves in a technical expert's methodology. *See*, *McGee*, 2003 WL 23350439 citing *Brooks v. Outboard Marine Corp.*, 234 F. 3d 19, 92 (2nd Cir. 2000). Roberts extrapolation of the data has not been tested and cannot be tested. The failure to test is consistent with those decisions that exclude the proffered expert testimony. *McGee*, 2003 WL 23350439 citing *Jauregui v. Carter Mfg. Co., Inc.*, 173 F. 3d 1076 (8th Cir. 1999). Because Roberts untested theories are generally not accepted in the scientific community, the theories obviously have a high potential rate of error. In addition Roberts' testimony is not based upon a matter growing naturally out of research Roberts independently conducted, but

instead was developed solely and expressly for the purpose of testifying in this

case. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999) (court

holding no abuse of discretion in trial court's finding that doctor's opinion was

prepared in anticipation of litigation).

> iv. *Roberts' Third And Final Method of Establishing the Speed of the Defendants' Tractor Trailer was Devoid of Any And All Scientific Methodology.*

Roberts last method to determine the speed of the truck was to simply

calculate the average speed over the distance of the entire trip (from Southport

N.C. to Greensboro Georgia) and opine that the truck must have been going this

average speed at the point of the collision Dep. Roberts 216:20-217:1. This

"calculation" is laughable as it has absolutely no scientific backing and even

Roberts admits that the truck could be at a complete stop at one minute and doing

80 mph the next. *Id.* at 219:6-10. This method of establishing the tractor trailer's

speed is one that would be expected of a ninth grader and devoid of any and all

scientific methodology.

> v. *Roberts Methodologies that were Employed in Arriving at His Conclusions Have not Been Subjected to Peer Review or Publication.*

Another consideration under *Daubert* is whether the theory or technique at

issue has been subjected to peer review and publication. *Daubert*, 509 U.S. at 593.

Publication, which is but one element of peer review, is "not a *sine qua non* of admissibility," but "submission to the scrutiny of the scientific community is a component of 'good science," in part because it increases the likelihood that substantive flaws in methodology will be detected. *Id*. Thus, whether or not the expert's opinion has been published in a peer reviewed journal is a relevant consideration in assessing the validity of a particular opinion offered by an expert. *Id*. Roberts has failed to subject any of his theories or methodologies outlined above to peer review nor have his methods or conclusions been published. Thus this is yet another reason that this Court should strike his testimony. *Cadwell v. Gen. Motors Corp.*, 2005 WL 29 11755 (M.D. GA., October 27, 2005) (court striking expert's opinion and noting that his opinions on causation had not been subjected to peer review); *McGee v. Evenflow Co., Inc.*, 2003 WL 23350439 (M.D. Ga., December 11, 2003) (court holding accident reconstruction expert not qualified under Daubert for flawed methodology and noting that expert's opinion had not been subjected to peer review).

IV.    CONCLUSION

Roberts' expert testimony should be excluded for the reasons set forth above. None of the three methodologies that Roberts employed to determine the speed of the Defendants' tractor trailer are sufficiently reliable or based in the scientific

method to pass the *Daubert* standard, therefore this Court should grant the

Plaintiffs' Motion to Exclude Donald Roberts.

DATED, this 12th day of June, 2013.

Respectfully submitted,

s/ Mark D. Link

_____

MARK D. LINK
GA. BAR NO. 453153
FLA. BAR NO. 0917760
Attorney for Plaintiff

Link & Smith, P.C.
2142 Vista Dale Court
Tucker, GA 30084
Telephone: (404) 315-8840
Facsimile: (770) 414-8098
E-Mail: link@linksmithpc.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Local Rule 7.1(D) of the Northern District of Georgia that this pleading has been prepared in compliance with Local Rule 5.1(C).

Respectfully submitted,

s/ Mark D. Link

_____
MARK D. LINK
GA. BAR NO. 453153
FLA. BAR NO. 0917760
Attorney for Plaintiff

Link & Smith, P.C.
2142 Vista Dale Court
Tucker, GA 30084
Telephone: (404) 315-8840
Facsimile: (770) 414-8098
E-Mail: link@linksmithpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 12th, 2013, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record and via Regular U.S. Mail with sufficient postage affixed:

Mr. Richard Foster
HICKS CASEY & FOSTER
136 North Fairground Street
Suite 100
Marietta, Georgia 30060

Respectfully submitted,

s/ Mark D. Link

_____
MARK D. LINK
GA. BAR NO. 453153
FLA. BAR NO. 0917760
Attorney for Plaintiff

Link & Smith, P.C.
2142 Vista Dale Court
Tucker, GA 30084
Telephone: (404) 315-8840
Facsimile: (770) 414-8098
E-Mail: link@linksmithpc.com